# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID KIRKWOOD | * |
| v. | * Civil Action No. CCB-17-2005 |
| FINANCIAL WEST INVESTMENT GROUP, INC., d/b/a FINANCIAL WEST GROUP, *et al.* | * |

## MEMORANDUM

Pending before the court is defendant Financial West Investment Group, Inc.'s motion to compel arbitration, seeking dismissal of this case so the parties may resolve this matter via arbitration. For the reasons stated below, the court will deny defendant's motion to compel arbitration without prejudice.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff David Kirkwood is a Maryland resident and former client of defendant Financial West Investment Group, Inc. ("FWG"). FWG is a broker-dealer agency licensed by the Financial Industry Regulatory Authority. FWG's Hampstead, Maryland branch office's registered representative was Gary Steciuk from 2002 until December 2011. ECF 3 at ¶ 5, 7. Through its regional offices, FWG solicited clients to invest funds in various financial instruments, including annuities.

On April 5, 2004, FWG opened an annuity account for Mr. Kirkwood with Mr. Steciuk serving as his FWG stockbroker. ECF 57-4 at p. 2. Mr. Steciuk oversaw and managed Mr. Kirkwood's annuity account until 2014.[1] In July 2014, Mr. Kirkwood first became aware that Mr.

---

[1] Mr. Steciuk left FWG in December 2011 and began work as a Capital Synergy Partners, Inc. ("CSP") representative in January 2012, at which time Mr. Kirkwood transferred his FWG annuity account to CSP so Mr. Steciuk could continue managing it. Mr. Steciuk's employment at CSP terminated in July 2014. On November 17, 2017, this court dismissed CSP as a defendant in this case due to lack of personal jurisdiction. ECF 48.

Steciuk was engaged in fraudulent activity related to the annuity account. Mr. Kirkwood claimed that, beginning in 2006 and continuing until July 2014, Mr. Steciuk defrauded Mr. Kirkwood by soliciting Mr. Kirkwood to invest more than $400,000 in illegitimate annuity investments. ECF 3 at ¶ 11. Rather than investing Mr. Kirkwood's funds into legitimate financial instruments, Mr. Steciuk instead invested them into his own accounts and used the funds to his benefit, causing Mr. Kirkwood ultimately to lose more than $350,000. ECF 3 at ¶¶ 12, 16. On March 27, 2015, Mr. Steciuk pleaded guilty in this district to one count of mail fraud, ECF 3 at p. 56, after having been charged with several federal offenses in connection with Mr. Kirkwood's and other defrauded investors' accounts, ECF 3 at p. 19. Mr. Steciuk remains incarcerated at a federal facility. ECF 3 at ¶ 7.

On July 18, 2017, Mr. Kirkwood initiated this suit, alleging breach of contract, fraud, constructive fraud, and negligent supervision. On June 6, 2018, FWG filed its motion to compel arbitration. The motion has been fully briefed and no oral argument is necessary.

## STANDARD OF REVIEW

The United States Supreme Court has identified arbitration agreements as "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). "[A] motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *see also Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365–66 & n. 9 (4th Cir. 2012) (analyzing a dismissal in favor of arbitration under Rule 12(b)(3)). Thus, motions to compel arbitration may properly be treated as motions to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

"On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Aggarao*, 675 F.3d at 365–66 (citing *Sucampo*, 471 F.3d at 550). Facts should be viewed in the light most favorable to the plaintiff, and the plaintiff is obligated "to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Id.* at 366 (internal citations omitted).

## ANALYSIS

Federal policy has long favored the resolution of disputes through arbitration. *New Prime, Inc. v. Oliveira*, -- S. Ct. ----, No. 17-340, 2019 WL 189342, at *9 (U.S. Jan. 15, 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*. 460 U.S. 1, 24 (1983)). Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Generally, however, courts may not compel parties to submit to arbitration any dispute they did not agree to arbitrate. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (internal citation omitted).

Pursuant to the FAA and related case law, "the question of who decides arbitrability is itself a question of contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, -- S. Ct. ----, No. 17-1272, 2019 WL 122164, at *2 (U.S. Jan. 8, 2019). Jurisdiction to resolve the arbitrability of an agreement generally resides with the district court unless the arbitration agreement specifically assigns the issue of arbitrability to the arbitrator. *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 526 (4th Cir. 2017) (holding that courts should resolve questions of arbitrability absent clear and unmistakable evidence, beyond the mere presence of an expansive arbitration clause, that the parties intended for an arbitrator to determine arbitrability) (quoting *Hayes v. Delbert Servx. Corp.*, 811 F.3d 666, 671 n. 1 (4th Cir. 2016) and *Peabody Holding Co. v. United Mine*

3

*Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012)) (internal quotation marks and further internal citations omitted), *abrogated on other grounds by Schein*, 2019 WL 122164 at *4. Courts should consider any challenge to the validity of the specific agreement to arbitrate (as opposed to the validity of the entire contract) before ordering a case to arbitration. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) (internal citations and quotation marks omitted).

In its motion to compel arbitration, FWG requested that the court dismiss the case so that the parties may resolve their dispute in arbitration, as the parties purportedly agreed to do when they signed the new account form. *See* ECF 57-4 at p. 2. In his opposition, Mr. Kirkwood did not argue that his claims against FWG were not covered by the arbitration agreement, nor did he assert that the parties were not subject to a valid contract. Instead, Mr. Kirkwood argued, via an affidavit attached to his opposition, that the specific arbitration agreement, contained within the new account form, should not be enforced because his signature on the form was forged, and that, as a result, he never agreed to arbitrate this or any other dispute with FWG. FWG responded to Mr. Kirkwood's forgery claims by arguing that Mr. Kirkwood, in attempting to enforce FWG's contractual obligations stemming from the allegedly-forged new account form, was equitably estopped from asserting that the arbitration agreement contained in the same form was unenforceable.[2]

First, the court notes that a claim of a forged signature on an agreement containing an arbitration provision falls under the court's jurisdiction to resolve because such claims go to the arbitrability of a dispute and because there is no indication that the parties assigned the issue of

---

[2] The Fourth Circuit has found that, in certain circumstances, a nonsignatory to an agreement may be equitably estopped from disputing an arbitration agreement. *See, e.g., Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 628 (4th Cir. 2006) (noting that "a non-signatory will be estopped when his underlying claims seek a direct benefit from the contract containing the arbitration clause" (citing *R.J. Griffin & Co. v. Beach Club II Homeowner's Ass'n*, 384 F.3d 157, 162 (4th Cir. 2004) (internal quotation marks omitted))); *Int'l Paper Co.*, 206 F.3d at 418 (internal citations omitted).

4

arbitrability to an arbitrator. In *Monk v. Perdue Farms, Inc.*, the district court first identified forgery as a matter of arbitrability rather than a question of enforceability of a contract in its entirety. 12 F. Supp. 2d 508, 509 (D. Md. 1998) ("when the allegation is forgery, a party is claiming that he or she never entered into the contract containing an arbitration clause in the first place. Such a claim is for the Court to resolve prior to staying an action pending arbitration."). The Fourth Circuit agreed, finding that "when a party reasonably claims that it never signed the agreement containing the arbitration clause, the court, not an arbitrator, must determine if the party is bound by it." *Gregory v. Interstate/Johnson Lane Corp.*, 188 F.3d 501, 1999 WL 674765, at * 7 (4th Cir. Aug. 31, 1999) (per curiam) (citing *Monk*, 12 F. Supp. 2d at 509) (further internal citations omitted).[3] A dispute regarding the signature on an agreement with an arbitration provision was again identified as an arbitrability issue as recently as 2015, when Chief Judge Bredar of this court noted that parties who prove they did not sign an agreement with an arbitration clause could not be bound by such a clause. *Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 349 (D. Md. 2015) (citing *Gregory*, 188 F.3d 501, 1999 WL 674765 at * 7) (further internal citation omitted). Similarly, if Mr. Kirkwood never agreed to arbitrate disputes with FWG, then this court cannot order him to do so, rendering his forgery claim one that the court should resolve prior to ordering the parties to arbitrate. *Int'l Paper Co.*, 206 F.3d at 416.

FWG's equitable estoppel argument, however, could preclude the court from reaching the issue of forgery, because Mr. Kirkwood would be estopped from claiming his signature was forged if he were relying on the new account form to support the claims raised in his complaint. But this argument relies on the assumption that the new account form, of which the court first became aware when FWG attached it to its motion to compel arbitration, was the contract Mr. Kirkwood

---

[3] Unpublished opinions are cited not for their precedential value but for the soundness of their reasoning.

was trying to enforce. In neither the complaint nor the opposition to the motion to compel did Mr. Kirkwood make such an assertion, possibly due to the fact that he claimed he had never seen the new account form prior to initiating this case.[4] ECF 58 at p. 3. This matter is still in the early stages of litigation, as acknowledged by FWG in its motion to compel, ECF 57-1 at p. 5, so it has yet to be established whether the new account form FWG attached to its motion constituted all or some part of the parties' agreement. Mr. Kirkwood may still prove that he enjoyed a contractual relationship with FWG at the time of Mr. Steciuk's wrongdoing based on other documents or agreements. Both parties have acknowledged the existence of Mr. Kirkwood's FWG annuity account and Mr. Steciuk's management of it, which may indicate that the parties had entered into a contractual relationship even without the existence of an enforceable new account form.[5]

Given the open question regarding what documents and/or agreements comprise the parties' contract upon which Mr. Kirkwood brings suit, FWG's equitable estoppel argument currently does not preclude Mr. Kirkwood from contesting the arbitration agreement. Setting aside the new account form on the basis of forgery would not necessarily mean the parties did not enter into an enforceable contract; furthermore, FWG has provided the court with no reason to presume that the new account form constitutes either the basis or the entirety of the parties' contract. Thus, Mr. Kirkwood's attempt to disclaim the arbitration agreement contained within the new account form does not necessarily amount to an attempt to disclaim the entirety of the parties' contract,

---

[4] Instead, Mr. Kirkwood's complaint refers to contractual agreements he entered into with FWG wherein he agreed to pay various fees and commissions in exchange for FWG's advice and account management, without referring to any specific contractual documents. ECF 3 at ¶ 29. Mr. Kirkwood further represented that these contractual agreements "contained the implied understanding that FWG would conduct itself in good faith." ECF 3 at ¶ 29.

[5] The court makes no decision regarding the likelihood of success of any of the possible arguments identified in this opinion, and only notes such potential arguments to demonstrate the factors it considered which indicate Mr. Kirkwood should not be equitably estopped from challenging the arbitration clause at this time.

and therefore does not inherently conflict with his attempt to enforce FWG's contractual obligations. Further discovery is required.

## CONCLUSION

For the reasons stated above, the court will deny FWG's motion to compel arbitration without prejudice. A separate order follows.

1/30/19
Date

Catherine C. Blake
United States District Judge