IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID KIRKWOOD | * |
| | * |
| v. | *  Civil Action No. CCB-17-2005 |
| | * |
| FINANCIAL WEST INVESTMENT | * |
| GROUP, INC., d/b/a FINANCIAL WEST | * |
| GROUP, *et al.* | * |

## MEMORANDUM

Pending before the court is defendant Financial West Investment Group, Inc.'s ("FWG") renewed motion to compel arbitration. For the reasons stated below, the court will grant the motion.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff David Kirkwood is a Maryland resident and former client of defendant Financial West Investment Group, Inc. ("FWG"). FWG is a broker-dealer agency licensed by the Financial Industry Regulatory Authority ("FINRA"). Through its regional offices, FWG solicited clients to invest funds in various financial instruments, including annuities. (Am. Compl. ¶ 6, ECF No. 3). Gary Steciuk was the registered representative for FWG's Hampstead, Maryland branch office from 2002 until December 2011. (*Id.* ¶¶ 5, 7).

On April 5, 2004, FWG opened an annuity account for Kirkwood. (Def.'s Renewed Mot. to Compel Arbitration ("Def.'s Renewed Mot.") Ex. 3, ECF No. 68-4). The New Account Form for the annuity listed Steciuk as Kirkwood's FWG broker. (*Id.* at 2). Kirkwood denies signing the New Account Form and suggests that Stecuik forged Kirkwood's signature. (Pl.'s Opp. to Def.'s Mot. to Compel Arbitration at 3, ECF No. 58). Steciuk oversaw and managed Kirkwood's

1

annuity account until 2014.[1] In July 2014, Kirkwood first became aware that Steciuk was engaged in fraudulent activity related to the annuity account. From 2006 until July 2014, Steciuk defrauded Kirkwood by soliciting him to invest more than $400,000 in illegitimate annuities. (Am. Compl. ¶ 11). Rather than investing Kirkwood's funds into legitimate financial instruments, Steciuk instead invested them into his own accounts and used the funds to his benefit, causing Kirkwood ultimately to lose more than $350,000. (*Id.* at ¶¶ 12, 16). On March 27, 2015, Steciuk pleaded guilty in this district to one count of mail fraud, after having been charged with several federal offenses in connection with Kirkwood's and other defrauded investors' accounts. (Steciuk Criminal Docs., ECF No. 3 at 19, 56). Steciuk remains incarcerated at a federal facility.

On July 18, 2017, Kirkwood initiated this suit, alleging breach of fiduciary duty through fraud and constructive fraud, breach of contract, and negligent supervision. (Am. Compl. ¶¶ 17–36). FWG filed its first motion to compel arbitration on June 6, 2018, requesting that the court dismiss the case so that the parties may resolve their dispute in arbitration. FWG argued that the basis for Kirkwood's relationship with FWG was the New Account Form, which includes a broad arbitration clause and ostensibly bears Kirkwood's signature.[2] The court denied the motion without prejudice, noting that Kirkwood's forgery allegation goes to the arbitrability of the dispute, but that Kirkwood may be equitably estopped from making this claim if Kirkwood relies on the New Account Form to establish his contractual relationship with FWG. (Jan. 30, 2019 Memo. at 4–6, ECF No. 63).

---

[1] Steciuk left FWG in December 2011 and began work as a Capital Synergy Partners, Inc. ("CSP") representative in January 2012, at which time Kirkwood transferred his FWG annuity account to CSP so Steciuk could continue managing it. Steciuk's employment at CSP terminated in July 2014. On November 17, 2017, this court dismissed CSP as a defendant in this case due to lack of personal jurisdiction. (ECF No. 48).

[2] In relevant part, the arbitration clause in the New Account Form provides that "[a]rbitration is final and binding on the parties. The parties are waiving their right to seek remedies in court, including the right to jury trials." (Def.'s Renewed Mot. Ex. 3, ECF No. 68-4).

Now pending before the court is FWG's renewed motion to compel arbitration. The motion has been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2018).

**STANDARD OF REVIEW**

The United States Supreme Court has identified arbitration agreements as "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). "[A] motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *see also Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365–66 & n. 9 (4th Cir. 2012) (analyzing a dismissal in favor of arbitration under Rule 12(b)(3)). Thus, motions to compel arbitration may properly be treated as motions to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

"On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings." *Aggarao*, 675 F.3d at 365–66 (citing *Sucampo*, 471 F.3d at 550). Facts should be viewed in the light most favorable to the plaintiff, and the plaintiff is obligated "to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Id.* at 366 (internal citations omitted).

**ANALYSIS**

Federal policy favors the resolution of disputes through arbitration. *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 543 (2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2. Generally, however, courts may not compel parties to submit to arbitration any dispute they did not agree to arbitrate. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (internal citation omitted). Whether the parties have agreed to arbitrate a particular dispute is a question of "arbitrability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)

Pursuant to the FAA and related case law, "the question of who decides arbitrability is itself a question of contract." *Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). Jurisdiction to resolve the arbitrability of an agreement generally resides with the district court unless the arbitration agreement specifically assigns the issue of arbitrability to the arbitrator. *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 526 (4th Cir. 2017) (holding that courts should resolve questions of arbitrability absent clear and unmistakable evidence, beyond the mere presence of an expansive arbitration clause, that the parties intended for an arbitrator to determine arbitrability) (quoting *Hayes v. Delbert Servx. Corp.*, 811 F.3d 666, 671 n. 1 (4th Cir. 2016) and *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012)) (internal quotation marks and further internal citations omitted), *abrogated on other grounds by Schein*, 139 S. Ct. at 529. Courts must consider any challenge to the validity of an agreement to arbitrate before ordering a case to arbitration. *See Rent-A-Center*, 561 U.S. at 70–71. An allegation of forgery constitutes a challenge to the validity of an agreement to arbitrate. *See Gregory v. Interstate/Johnson Lane Corp.*, 188 F.3d 501, 1999 WL 674765, at * 7 (4th Cir. Aug. 31, 1999) (per curiam);[3] *Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 349 (D. Md. 2015); *Monk v. Perdue Farms Inc.*, 12 F. Supp. 2d 508, 509 (D. Md. 1998).

---

[3] Unpublished opinions are cited not for their precedential value but for the soundness of their reasoning.

FWG argues that the court cannot consider Kirkwood's challenge to the arbitration agreement because Kirkwood is equitably estopped from claiming his signature is a forgery. The doctrine of equitable estoppel recognizes that "it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). Pursuant to this principle, a plaintiff cannot deny that he is bound by an arbitration agreement when his claims against the defendant "arise from the contract containing the arbitration clause." *Id.* at 628 (quoting *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 161 (4th Cir. 2004)) (internal quotation marks and alterations omitted).

As the court noted in its first denial of FWG's motion to compel arbitration, the doctrine of equitable estoppel precludes the court from addressing the forgery allegation if Kirkwood's claims against FWG arise from the contractual relationship established by the New Account Form.[4] FWG maintains that its only contract with Kirkwood is contained in the New Account Form, and that "[Kirkwood] cannot invoke rights as an accountholder while simultaneously disclaiming his own contractual obligations arising from that account." (Def.'s Renewed Mot. at 19, ECF No. 68-1). Kirkwood counters that he does not rely on the New Account Form at all, and that his breach of contract claim is based on "oral communications that, in exchange for commissions and fees, [FWG] would act in good faith and properly invest his savings."[5] (Pl.'s Opp. to Def.'s Renewed Mot. at 3, ECF No. 71).

---

[4] All of Kirkwood's claims against FWG require the existence of a contractual relationship between the parties. In Counts I and II of his amended complaint (fraud and constructive fraud), Kirkwood alleges that FWG breached its fiduciary duty to him. (Am. Compl. ¶¶ 18, 24). In Count III, Kirkwood alleges that FWG breached its "contractual agreements" with him. (Am. Compl. ¶ 29). And in Count IV, Kirkwood alleges that FWG breached a "supervisory obligation[]" it owed to him. (Am. Compl. ¶¶ 32–35).

[5] Kirkwood does not address whether his other claims against FWG are also based on the alleged oral contract. But as all of Kirkwood's claims require a contractual relationship, and he disclaims the New Account Form, the court assumes Kirkwood seeks to base his other claims on the alleged oral agreement as well.

5

The court cannot find that an oral contract existed between the parties. Kirkwood's first mention of any oral contract appears in his opposition to FWG's renewed motion to compel arbitration, and his only description of the contract's terms is that FWG agreed, "in exchange for commissions and fees," to "act in good faith and properly invest [Kirkwood's] savings." Under Maryland law, "an enforceable contract must express with definiteness and certainty the nature and extent of the parties' obligations." *Kiley v. First Nat. Bank of Maryland*, 102 Md. App. 317, 333 (1994) (citing *Canaras v. Lift Truck Services*, 272 Md. 337, 346 (1974)). Based on the limited amount of information Kirkwood has provided, the court cannot discern the terms of the alleged oral contract. Kirkwood does not mention an oral contract in his amended complaint, nor does he provide any evidence—aside from the assertions in his opposition to FWG's renewed motion to compel arbitration—that the contract existed. *See Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 481 (D. Md. 2002) (finding a plaintiff's "own, unsworn assertions" insufficient to support a claim that oral agreements existed).[6] Kirkwood does not state when the alleged contract was formed or with whom he had "oral communications." He also does not specify how much he agreed to pay in fees or the nature of FWG's alleged promise to invest on his behalf. In the absence of supporting factual allegations, "mere legal conclusions that 'an agreement' or 'a contract' existed between the parties" are insufficient to establish the existence of an oral contract. *Dolan v. McQuaide*, 215 Md. App. 24, 33–34 (2013). The court thus finds

---

[6] As the court noted in its previous denial of FWG's motion to compel arbitration, "the court is permitted to consider evidence outside the pleadings" when ruling on such a motion. *See Aggarao*, 675 F.3d at 365–66 (citing *Sucampo*, 471 F.3d at 550). Accordingly, Kirkwood was on notice that if he presented the court with evidence tending to show the existence of an oral contract, the court would consider it. But Kirkwood has chosen not to supplement the assertion in his pleading with any additional evidence. Indeed, the affidavit Kirkwood submitted in connection with his opposition to FWG's earlier motion to compel arbitration does not refer to any oral contract. (Aff. of David Kirkwood, Pl.'s Opp. to Def.'s Mot. to Compel Arbitration, ECF No. 58-2).

that Kirkwood has not presented enough evidence to show a relationship with FWG based on an oral contract.[7]

Without an oral agreement, it appears that the only basis for a contractual relationship between Kirkwood and FWG is the New Account Form. Accordingly, the court will not address Kirkwood's forgery allegations, because he is equitably estopped from contesting the arbitration clause of the contract under which he is also claiming a cause of action against FWG. The court, then, has no choice but to grant FWG's motion to compel arbitration.[8] In so ruling, the court expresses no opinion as to the ultimate merits of Kirkwood's claims, but finds that, on the basis of the evidence presented, the appropriate place to adjudicate these claims is in arbitration.

## CONCLUSION

For the foregoing reasons, the court will grant the FWG's motion to compel arbitration. A separate order follows.

___10/3/19___
Date

___CCB___
Catherine C. Blake
United States District Judge

---

[7] FWG argues that this alleged oral contract would be barred by the statute of frauds, as it would be impossible for such a contract to be performed in one year. This is not a strong argument. Maryland construes the "one year clause" of the statute of frauds strictly; the Maryland Court of Appeals has consistently held that "the statute will not apply where the contract can, by any possibility, be fulfilled or completed in the space of a year[.]" *Chesapeake Fin. Corp. v. Laird*, 289 Md. 594, 600 (1981) (quoting *Ellicott v. Peterson*, 4 Md. 476, 488 (1853)); *see also Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F. Supp. 2d 282, 289 (D. Md. 2003). As it is theoretically possible that an agreement to "invest [Kirkwood's] savings" could be completed in a year, the statute of frauds would not necessarily bar such an oral agreement.

[8] It seems that the court's only other choice would be to dismiss Kirkwood's complaint in its entirety, as without an oral agreement or the New Account Form, Kirkwood can show no contractual relationship upon which to base his claims. But the court assumes that Kirkwood would prefer the arbitration forum to no forum at all.

7